**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| ELIZABETH ROUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:16-CV-420-TLS |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Elizabeth Rouse, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits and Supplemental Security Income. The Plaintiff's application was denied initially and upon reconsideration. An administrative law judge (ALJ) held a hearing on the Plaintiff's application, and on June 15, 2016, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because she was not disabled under the relevant provisions of the Social Security Act. On October 11, 2016, the Appeals Council denied review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

**EVIDENCE OF RECORD**

The Plaintiff was born on April 24, 1961. (R. at 28, ECF No. 9.) The Plaintiff has a work history that includes working as a patient care representative and a customer service representative. (R. at 27.)

In the present case, the Plaintiff claims to have become disabled on January 21, 2014, due to multiple physical and mental impairments, including nephrotic syndrome and residual symptoms from sepsis and septic pulmonary embolism with left kidney abscess and left pyelonephritis; right bimalleolar fracture (ankle), status-post open reduction internal fixation, healing slowly without complications; diabetes; peripheral neuropathy; osteopenia; gastroesophageal reflux disease with esophagitis; anemia; hypertension; intermitted claudication; and obesity. (R. at 21.)

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ determined that the Plaintiff had not engaged in SGA since the alleged onset of disability, and thus, the Plaintiff satisfied the step one inquiry. (R. at 21.) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's impairments, including nephrotic syndrome and residual

symptoms from sepsis and septic pulmonary embolism with left kidney abscess and left pyelonephritis; right bimalleolar fracture (ankle), status-post open reduction internal fixation, healing slowly without complications; diabetes; and peripheral neuropathy were severe impairments because they significantly limited her ability to perform basic work activities. (*Id.*) The ALJ did not find that the Plaintiff's osteopenia, gastroesophageal reflux disease with esophagitis, anemia, hypertension, intermitted claudication, and obesity were severe. (*Id.*) Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rises to this level, he earns a presumption of disability "without considering [his] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1 and that the Plaintiff has the RFC to perform light work, as defined by § 404.1567(b),

> except: lift twenty pounds occasionally; lift and carry ten pounds frequently; stand, walk, and sit for six hours each in an eight-hour workday with normal breaks; never climb ladders, ropes, or scaffolds; never climb ramps or stairs; occasionally balance, stoop, knee[l], crouch, and crawl; push and pull within the lifting restrictions; avoid slick uneven terrain; avoid concentrated exposure [to] extreme cold and wetness; and avoid concentrated use of moving machinery and unprotected heights.

(R. at 22–23.)

In arriving at the RFC, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, "however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 23.)

The ALJ began by summarizing the Plaintiff's testimony, including her testimony that she elevates her legs daily, has problems with her stamina, uses a cane to ambulate, can lift a gallon of milk, and can walk for five minutes. (R. at 23.) The ALJ then compared the Plaintiff's subjective complaints to the medical evidence in the record, detailing the Plaintiff's road to prolonged hospitalization beginning in January 2014 due to sepsis and septic pulmonary embolism with left kidney abscess and kidney infection, and the Plaintiff's rehabilitation. (*Id.*) The ALJ noted that as a result of this medical issue, though the Plaintiff complained of severe leg pain, weakness, and decreased motion in her legs, and testing revealed that she had sensory motor peripheral neuropathy[1] of the lower extremities, the Plaintiff underwent physical therapy efforts and had no denervation or significant lumbar radiculopathy[2] of the lower extremities. (R. at 24.) Moreover, the ALJ found that the Plaintiff's claim that she must substantially use a wheelchair and cane for ambulation was not supported by the medical evidence. (R. at 27.)

The ALJ also reviewed the medical assessment of Dr. Feliciano, the Plaintiff's treating physician. In particular, the ALJ reviewed Dr. Feliciano's statement dated May 22, 2014, in

---

[1] Weakness, numbness, and pain for nerve damage. The Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061 (last visited Jan. 17, 2018).

[2] Pain or inflammation along the sciatic nerve. Emory Healthcare, https://www.emoryhealthcare.org/orthopedics/lumbar-radiculopathy.html (last visited Jan. 17, 2018).

which Dr. Feliciano opined that the Plaintiff "is totally incapacitated" and "cannot stand or walk without assistance." (R. at 650.) The ALJ also reviewed Dr. Feliciano's statement dated November 3, 2015, in which he opined that the Plaintiff has limited strength in her legs, is a fall risk, is incapacitated for the remainder of her lifetime, is permanently disabled with no possibility of further recovery, is incapable of performing the duties of her previous occupation, and is totally dependent upon her family for her daily care. (R. at 1016–17.)

The ALJ ultimately gave little weight to Dr. Feliciano's assessments, finding that they "are not consistent with the medical evidence, including Dr. Feliciano's own contemporaneous medical records." (R. at 24.) First, in regards to Dr. Feliciano's May 2014 assessment, the ALJ pointed out that a couple of months prior, in March of 2014, the Plaintiff reported that she had more energy, she was sleeping well, and she was tolerating her medication. (R. at 622.) Moreover, her physical examinations were normal in 2014, and February 2015. (R. at 622, 853–54, 867–68.)

In regard to Dr. Feliciano's November 2015 assessment, the ALJ noted that prior to the assessment, in August of 2015, the Plaintiff had stepped up her exercise by walking every day, twice a day, for thirty minutes, and she also volunteered at the Indiana State Fair. (R. at 841.) Though the ALJ noted that the Plaintiff subsequently suffered an ankle fracture injury in October 2015, the ALJ determined that by December 2015, the Plaintiff had a good response to her pain medications, started taking less, and had no neurological complications (R. at 1202–23.) "Yet, Dr. Feliciano reported that neurologically, the claimant had no sensation in her bilateral knees down to her feet, 3/5 strength in the ankle and feet bilaterally with a slow wide gait." (R. at 25.) The ALJ further pointed out that the records from the Benefits Center Life Insurance Company of America[] by Renee Schreiber Chervenak, M.D. determined that Dr. Feliciano's assessment

was not consistent with the Plaintiff's treatment records. (*Id.*) Finally, the ALJ considered the August 2014 and December 2014 physical assessments of the state agency medical consultants, giving those great weight "as they are consistent with the medical evidence, including treatment records, and the adopted residual functional capacity." (R. at 26.)

The ALJ ultimately found that,

> Giving [the Plaintiff] the benefit of the doubt, the undersigned has concluded that she could perform work at the adopted residual functional capacity, which adequately accommodates the claimant's limitations. It is reasonable that the claimant could function as provided in the adopted residual functional capacity based on the medical evidence and the record as a whole. However, the medical evidence does not support [] the degree and severity of the claimant's limitations and restrictions as alleged.

(*Id.*) In support, the ALJ found that though the Plaintiff had sepsis and septic pulmonary embolism with left kidney abscess and left pyelonephritis, her March, June, and September 2014 treatment records noted that she was healed and in no pain, (R. at 821–22, 827, 829, 831), and follow-up reports, including a March 2015 report, stated that the infection was eradicated. (R. at 935.) The ALJ also determined that the Plaintiff's physical examinations were normal in 2015.

At the final step of the evaluation, the ALJ determined that the Plaintiff is capable of performing her past relevant work as a patient care representative. (R. at 27–28.) Additionally, the ALJ found that there are a significant number of jobs in the national economy that the Plaintiff could perform, considering the Plaintiff's age, education, work experience, and RFC. (R. at 28.) These jobs include cashier, reservation sales representative, and survey worker clerk. (R. at 28–29.)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Id.* at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529

F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Plaintiff presents numerous faults with the ALJ's decision. The Court has analyzed these arguments below.

### A.      The Plaintiff's Treating Physician, Dr. Feliciano

The Plaintiff argues that the ALJ erred by giving little weight to Dr. Feliciano's opinion. First, the Plaintiff points out that the ALJ did not engage in a discussion concerning the "checklist of factors" concerning the length of the treating relationship, frequency of examination, nature of the treatment relationship, and the extent of the treatment relationship. *See* 20 C.F.R. § 404.1527. The Plaintiff also argues that there is ample evidence in the medical record to support Dr. Feliciano's conclusion that the Plaintiff is incapacitated, and so, the ALJ impermissibly selectively cited from the record. Moreover, the Plaintiff argues that the ALJ incorrectly relied upon the opinion of the disability insurance carrier physician, who conducted a one-time review of the Plaintiff's medical records and may have had a bias against the Plaintiff, and the opinions of the state agency medical consultants, because the ALJ did not weigh the opinions pursuant to the checklist of factors and the consultants conducted a review of the Plaintiff's medical records in December of 2014, when her medical records were not yet complete.

The Court finds that the ALJ did articulate reasons as to why she discredited Dr. Feliciano's opinion, pointing out that the medical records did not support the severity and degree of restrictions Dr. Feliciano recommended. However, the Court also finds that the ALJ did not appear to weigh evidence that does support Dr. Feliciano's opinion when making her ultimate decision to give little weight to Dr. Feliciano. For instance, in November of 2015, Dr. Feliciano's medical records indicate that the Plaintiff had no sensation in her knees down to her feet, and that she had 3/5 strength in her ankle/feet. (R. at 840.) Other parts of the record demonstrate that Dr. Feliciano determined that Plaintiff veered to the left when walking and had a slow and cautious gait. (R. at 870, 853.) The ALJ does not indicate why she credited only the evidence that contradicted Dr. Feliciano, indicating, for example, that the Plaintiff was taking less pain medication and was sleeping well.

Furthermore, even "[w]hen the record contains well supported contradictory evidence, the treating physician's opinion 'is just one more piece of evidence for the administrative law judge to weigh,' taking into consideration the various factors listed in the regulation." *Skelton v. Astrue*, No. 09-CV-296-BBC, 2009 WL 4730792, at *7 (W.D. Wis. Dec. 3, 2009) (citation omitted). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citation omitted); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision which "said nothing regarding this checklist of factors"); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927. However, the

decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."). Though the Seventh Circuit has also held that an ALJ does not always have to explicitly weigh every factor while discussing her decision to reject a treating physician's report, *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012), the ALJ's reasoning and the facts of this case are more analogous to *Campbell*, in which "several of the factors support the conclusion that [Dr. Feliciano's] opinion should be given greater weight: [Dr. Feliciano] treated [the Plaintiff] for [over] fifteen months; [Dr. Feliciano] treated the Plaintiff on a monthly [to bi-monthly] basis [and saw the Plaintiff for a total of fourteen occasions]; and []he is a [medical doctor]." F.3d at 308. Even though it may be the case that the ALJ determined that the inconsistencies in the medical record, when viewed in light of the checklist of factors, still rendered Dr. Feliciano's opinion "just one more piece of evidence to weigh," *Skelton*, 2009 WL 4730792, at *7, the ALJ's decision does not make this clear. Without this clarity, the Court is unable to trace the path of the ALJ's reasoning and uphold the ALJ's decision.

Moreover, it appears that part of the ALJ's decision to reject Dr. Feliciano's opinion was a result of weighing Dr. Feliciano's opinion against the opinion of Dr. Chervenak, with the Benefits Center Life Insurance Company, finding that Dr. Chervenak "noted that the assessment of Dr. Feliciano was not consistent with the treatment records." (R. at 25.) Pursuant to 20 CFR § 404.1527(c),[3] in the case of any medical opinion, an ALJ must still evaluate the checklist of factors outlined in the regulation. Here, this would require the ALJ to weigh and explain how Dr. Chervenak's review of the Plaintiff's medical records outweighed both the May 2014 and November 2015 assessments by the Plaintiff's treating physician. Moreover, the ALJ did not

---

[3] Applicable in this case because the claim was filed before March 27, 2017.

appear to account for any apparent bias from Dr. Chervenak, who worked for the Plaintiff's disability insurance carrier.

Similarly, the ALJ gave significant weight to the state agency medical consultants, finding that their conclusions were consistent with the medical evidence. However, as was the case in *Campbell*, the consultants "had reviewed only part of [the Plaintiff's] treatment records," only through December of 2014, though there are medical records spanning an additional year, including Dr. Feliciano's November 2015 opinion and contemporaneous medical records. 672 F.3d at 309. Accordingly, the Court finds that "[a]lthough an ALJ may give weight to consultative opinions, here, the ALJ did not adequately explain why the reviewers' opinions were entitled to greater weight than those of treating" physician, Dr. Feliciano. *Id.*

**B.     The Plaintiff's Residual Functional Capacity**

The Plaintiff also contends that she testified to elevating her legs and feet to the height of two feet whenever she sits, (R. at 71), and that such a limitation should have been considered as a part of her RFC analysis. In her decision, while the ALJ acknowledged that the Plaintiff claims to elevate her feet, (R. at 23), the ALJ did not explain why the Plaintiff's RFC did not include a functional restriction that would allow the Plaintiff to elevate her legs and feet. In other words, presumably, the ALJ determined that elevation of the Plaintiff's legs was not a functional restriction, as it was not included in the Plaintiff's RFC, however, the ALJ did not explain what evidence she relied upon when determining that the Plaintiff did not need to elevate her legs when sitting, or why the Plaintiff's claim of leg elevation was otherwise not credible.

In *Smith v. Astrue*, the plaintiff alleged that she needed to elevate her legs, and she argued that:

> [T]he ALJ made only a cursory comment on this point: "The medical records do not support the limitations alleged by the claimant that she is medically required to elevate her legs." The ALJ failed to link any of the evidence to her conclusion regarding leg elevation, [the plaintiff] asserts, and she accuses the Commissioner of trying to salvage the ALJ's conclusion through "post hoc rationalization."

*Smith v. Astrue*, 467 F. App'x 507, 510 (7th Cir. 2012). The Seventh Circuit agreed, holding that the ALJ's discussion was "perfunctory" and "[a]n ALJ must explain her reasoning, building a so-called 'logical bridge' that connects the evidence and her decision." (*Id.* (citations omitted).)

Here, going even beyond *Smith*, the ALJ did not engage in any discussion regarding the Plaintiff's claim that she must elevate her feet and legs. The Court finds that this omission necessitates remand. In fact, during the hearing, the ALJ asked the vocational expert whether it would be possible for the Plaintiff to do her previous work if she had to elevate her feet and legs, and the expert testified that this was not possible, "nor any other jobs in the national economy without accommodation." (R. at 77.) Though the Government contends that the ALJ relied upon normal lower extremity findings in the medical record to reject the Plaintiff's allegation that she elevated her legs, the ALJ did not make this clear in her decision and "what matters are the reasons articulated by the ALJ, not the rationale advanced by the government on appeal." *Smith*, 467 F. App'x at 511 (internal quotations and citation omitted).

Because the Court is remanding on these issues, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on January 19, 2018.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT